NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 27 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

RRW LEGACY MANAGEMENT
GROUP, INC., a Washington Corporation;
ANTOINETTE WALKER; CAMPBELL
INVESTMENT COMPANY, a
Washington Corporation,

        Plaintiffs-Appellees,

v.

CAMPBELL WALKER, an individual,

        Defendant-Appellant.

Nos.  16-35648
        16-35836

D.C. No. 2:14-cv-00326-MJP

MEMORANDUM[*]

CAMPBELL INVESTMENT
COMPANY, a Washington corporation,

        Plaintiff-Appellee,

v.

CAMPBELL M. WALKER, a foreign
individual,

        Defendant-Appellant.

No.  16-35649

D.C. No. 2:14-cv-01544-MJP

---

     [*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted August 27, 2018
Seattle, Washington

Before: HAWKINS, McKEOWN, and W. FLETCHER, Circuit Judges.

In these two consolidated appeals, defendant Campbell M. Walker ("Campbell") appeals the district court's order granting summary judgment in favor of RRW Legacy Management Group ("RRW") and Antoinette Walker; its order granting partial summary judgment in favor of Campbell Investment Company ("CIC"), as well as other rulings and findings as to damages; and its award of attorney's fees to CIC. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the district court in all respects.

1. The RRW Matter

We review the district court's summary judgment decision de novo. *Universal Health Servs. Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004). The district court did not err in finding that Campbell was properly removed from his position as general partner of Argyll Limited Partnership. Campbell committed "willful misconduct," a listed "for cause" reason for removal under Section 7.1 of the Argyll Limited Partnership Agreement ("Agreement"), by failing to keep the

2

company records in Washington as required by the Agreement. Campbell contests the definition of "willful misconduct" used by the district court, but the definition used by the court does not materially differ from the one advanced by Campbell himself. *Compare* 6 Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 14.01 (6th ed.) ("Willful misconduct is the intentional doing of an act which one has a duty to refrain from doing or the intentional failure to do an act which one has the duty to do when he or she has actual knowledge of the peril that will be created and intentionally fails to avert injury."), *with Adkisson v. Seattle*, 258 P.2d 461, 466 (Wash. 1953) ("To constitute wilful misconduct, there must be actual knowledge, or that which the law deems to be the equivalent of actual knowledge, of the peril to be apprehended, coupled with a conscious failure to avert injury." (citation and quotation marks omitted)). Campbell's conduct satisfies either definition. The district court properly granted summary judgment on the basis that Campbell "did things it was his duty to refrain from doing and failed to do things which duty dictated that he do," acted with "actual knowledge of the peril," and failed to avert injury.

We review for an abuse of discretion the district court's determination not to apply laches. *In re Beaty*, 306 F.3d 914, 921 (9th Cir. 2002). Under Washington law, a party asserting laches must show (1) "knowledge or reasonable opportunity

3

to discover on the part of a potential plaintiff that he has a cause of action against a defendant"; (2) "unreasonable delay by the plaintiff in commencing that cause of action"; and (3) "damage to the defendant resulting from the unreasonable delay." *Carrillo v. City of Ocean Shores*, 94 P.3d 961, 970 (Wash. Ct. App. 2004) (citing *Lopp v. Peninsula Sch. Dist. No. 401*, 585 P.2d 801, 804 (Wash. 1978)). Absent "highly unusual circumstances," laches is not applied before the statute of limitations runs on the cause of action. *Id.* Washington's Uniform Declaratory Judgments Act does not have a statute of limitations, but Washington courts require lawsuits under the Act to be brought within a reasonable time. *Auto. United Trades Org. v. State*, 286 P.3d 377, 379 (Wash. 2012) (en banc).

The district court did not abuse its discretion in rejecting Campbell's laches defense because RRW filed its first amended complaint in Washington state court on February 26, 2014, slightly over a month after three of Campbell's siblings voted to remove him on January 21, 2014. Campbell argues that the district court should have focused on the events underlying his removal rather than the date of his removal and the plaintiff's lawsuit. We disagree. Nothing in the Agreement establishes a limitations period for the removal of a general partner. There is also evidence in the record that plaintiffs were previously unaware of their right to remove Campbell.

4

## 2. The CIC Matter

The district court did not err in granting partial summary judgment to CIC as to the payments made to Darshan League Limited ("Darshan") on the ground that Campbell breached his fiduciary duty to CIC when he authorized $3 million in payments from CIC to Darshan, an entity owned by Campbell's father and, later, by Campbell upon his father's death. We agree with the district court that the payments were "a textbook example of a 'conflicting interest transaction.'" *See* Wash. Rev. Code § 23B.08.700(1)(a) (defining a "conflicting interest transaction" as one where "the director knows at the time of commitment that the director or a related person is a party to the transaction"). The safe harbors of Wash. Rev. Code § 23B.08.710(2)(a)–(c) do not apply because Campbell did not receive approval of these transactions from a majority of disinterested directors or shareholders and did not produce any evidence that the transactions were fair to CIC.

The district court did not abuse its discretion in rejecting Campbell's laches and good faith defenses. A party asserting laches must demonstrate prejudice from the plaintiffs' delay. *Carrillo*, 94 P.3d at 970. Campbell argues that the plaintiffs' delay deprived him of the opportunity to present testimony from his father as to the reason or reasons for Campbell's decisions, including that "the funds paid to Darshan were to be used for the benefit of all of CIC's shareholders" and "the

5

intended tax benefits to CIC of making payments to Darshan." But there is no good faith defense to a conflicting interest transaction. Therefore, this testimony is not legally relevant, and Campbell was not prejudiced from any delay in suit.

Campbell argues that the district court erred in awarding damages for breaches of fiduciary duty at the bench trial for which there was no preceding determination of liability. We disagree. To the extent that the district court may have mischaracterized the issues remaining for adjudication during the bench trial, Campbell has not identified any practical consequence from the court's purported misstatements. The district court's findings of fact contain all elements for a conflicting interest transaction for each category of damages, and the court permitted CIC and Campbell to present evidence for each transaction. Campbell argues that the district court erred in denying his motion to exclude all evidence of damages due to CIC's failure to make initial disclosures as required by Fed. R. Civ. P. 26(a)(1). We review decisions whether to impose discovery sanctions—including decisions to exclude evidence under Fed. R. Civ. P. 37(c)(1)—for abuse of discretion. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105–06 (9th Cir. 2001). The district court did not abuse its discretion in denying Campbell's motion to exclude all evidence of damages. CIC's failure to make initial disclosures was both substantially justified and

harmless. After consolidation, the parties jointly proposed an amended case schedule, which the district court largely adopted, that did not include a deadline for disclosures. Accordingly, neither CIC nor Campbell ever made any initial disclosures, and Campbell did not raise the issue until shortly before trial. The failure was also harmless because the district court limited CIC's damages testimony to damage categories claimed in its experts' reports, and Campbell had the opportunity to depose the experts regarding those reports.

A district court's decision to allow or exclude evidence based on the hearsay rule is also reviewed for abuse of discretion. *Calmat Co. v. U.S. Dep't of Labor*, 364 F.3d 1117, 1122 (9th Cir. 2004). The district court did not abuse its discretion in admitting CIC's "QuickBooks" reports over Campbell's hearsay objection. The "QuickBooks" reports are admissible under Fed. R. Evid. 1006.

Campbell argues that the court erred in conducting a damages analysis that was inconsistent with *Interlake Porsche & Audi, Inc. v. Bucholz*, 728 P.2d 597 (Wash. Ct. App. 1986). We disagree. *Interlake* held that "[t]he duty of reimbursement is limited to those losses that were proximately caused by the fiduciary's misconduct," and that, as a result, a court may not identify a corporation's expenditures over a given period of time and then shift the burden to the fiduciary to prove that all expenses were legitimate. *Id.* at 605 (citation

omitted). *Interlake* did not alter the background rules that "damages need not be shown with mathematical certainty," and that "evidence of damage is sufficient if it affords a reasonable basis for estimating the loss and does not subject the trier of fact to mere speculation or conjecture." *Id.* at 603 (citations omitted). The district court's analysis is consistent with *Interlake* because the court awarded damages where it found that plaintiffs met their burden to show losses, and reduced damages where appropriate to account for totals that included legitimate business expenses.

The district court did not err in awarding attorney's fees to CIC. Washington law permits courts to award attorney's fees for breach of fiduciary duty where that breach rises to the level of "constructive fraud." *See Hsu Ying Li v. Tang*, 557 P.2d 342, 346 (Wash. 1976). The plain language of *Tang* shows that the court declined to award attorney's fees based on a common fund theory, but awarded fees, instead, based on a constructive fraud theory. *Id.* at 345–46; *Green v. McAllister*, 14 P.3d 795, 803–04 (Wash. Ct. App. 2003). The district court did not err in applying *Tang*.

Washington courts define "constructive fraud" as "failure to perform an obligation, not by an honest mistake, but by some 'interested or sinister motive.'" *Green*, 14 P.3d at 804 (quoting *In re Estate of Marks*, 957 P.2d 235, 241 (Wash.

8

Ct. App. 1998)). The district court's extensive findings of self-dealing provide sufficient evidence of constructive fraud.

**AFFIRMED.**